## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| **Inter-American Development Bank,** ) | |
| 1300 New York Avenue, N.W. ) | |
| Washington, D.C. 20577 ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **Case No.**  8:13-cv-2526 |
| **v.** ) | |
| ) | |
| **Luis Enrique Rodriguez,** ) | |
| Domicile Address: ) | |
| 10112 Edward Ave. ) | |
| Bethesda, MD 20814 ) | |
| Montgomery County ) | |
| ) | |
| Service Address: ) | |
| Rivers Correctional Institute ) | |
| 145 Parker's Fishery Rd. ) | |
| Winton, NC 27986 ) | |
| ) | |
| *Defendant.* ) | |

## COMPLAINT

Plaintiff Inter-American Development Bank, by and through counsel, hereby states the following claims against Defendant Luis Enrique Rodriguez:

## NATURE OF THE ACTION

1.     This is an action by the Inter-American Development Bank ("IDB") against Luis Enrique Rodriguez, the husband of an IDB employee. Rodriguez filed numerous false claims with IDB's self-funded health care plan and wrongfully obtained approximately $1 million in reimbursements for those claims.

2.     After IDB discovered these false claims, it referred the matter to the United States Attorney's Office for the District of Columbia. Rodriguez was subsequently charged with and pleaded guilty to violating 18 U.S.C. § 1347 (health care fraud).

1

3.      Through the criminal prosecution, IDB has received only $17,830.60 of the $1,014,475.15 in losses it sustained as a result of Rodriguez's fraud. It files this lawsuit to seek a judgment to satisfy the remaining $996,644.55 in losses it sustained.

**PARTIES**

4.      Plaintiff IDB is an international financial institution created by its member countries for the purpose of contributing to the acceleration of the process of economic and social development of its regional developing member countries. IDB's headquarters is in Washington, DC.

5.      Defendant Luis Enrique Rodriguez is a Spanish national who is in the United States under a G-4 work visa. He is domiciled in Montgomery County, Maryland with his wife and two children. Upon information and belief, Rodriguez is currently incarcerated in Rivers Correctional Institution in Winton, North Carolina.

**JURISDICTION AND VENUE**

6.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over Defendant because he is a resident of Maryland.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant is domiciled in Maryland. It is also appropriate in this Court under 28 U.S.C. § 1391(b)(2) because, upon information and belief, the events giving rise to Plaintiff's claims occurred in Maryland.

## FACTS

**The Medical Insurance Plan**

9.       IDB provides medical insurance for its employees and their dependents through a self-funded insurance plan ("Plan").

10.       Because the Plan is self-funded, IDB provides health benefits to its employees using its own funds, rather than contracting with an insurance company for a fully-insured plan. IDB therefore assumes the direct risk for the payment of claims made under the Plan.

11.       IDB contracts with third parties to help administer the Plan. Specifically, IDB contracts with Connecticut General Life Insurance Company ("CIGNA") to administer the Plan with respect to medical benefits.

12.       CIGNA acts as IDB's agent in administering the Plan.

13.       IDB distributes documents explaining the benefits and responsibilities of the Plan to its employees. These documents explain what kind of medical care is covered by the Plan and what kind of medical care is not covered by the Plan.

14.       The IDB Plan documents also make clear that the Plan is funded by IDB, so employees are made aware that medical claims are paid from IDB funds.

15.       The Plan uses a Preferred Provider Organization or "PPO" structure.

16.       Employees' medical costs are generally covered at a higher rate if they use preferred (or "in network") health care providers. For in-network providers, the employee need not submit a claim to the Plan because the provider will automatically submit the claim on the employee's behalf.

17.       Under the Plan, employees may also use health care providers that are "out of network," but the employee must generally pay a higher portion of the cost and pay a deductible.

3

In addition, for out-of-network providers, the employee must submit a claim form. The employee pays the provider for the service at the time of service and then submits a claim form to the Plan for reimbursement.

18.     On the claim form, the employee must include the name of the employee and employer and the patient information, if the patient was not the employee.

19.     IDB employees are under an obligation to submit true and accurate claims for reimbursement to the Plan.

20.     Specifically, each claim form includes a signature line for the employee to sign and date. Above the signature line, the form states "I certify that the information provided is true and correct."

21.     In addition, each claim form also included the following language:

> Any person who knowingly and with intent to defraud any insurance company or other person (1) files an application for insurance or statement of claim containing any materially misleading information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act which is a crime . . .

22.     With the claim form for out-of-network services, the employee must submit an itemized invoice from the medical provider.

23.     This invoice must include the employee name, patient name, provider name, provider credentials, provider address, provider tax ID number, date of service, type of service or procedure code, diagnosis code and provider's charge for the service or procedure.

24.     CIGNA would process the claim form on IDB's behalf. If the itemized invoice submitted by the employee showed that the employee had already paid the provider, CIGNA would mail a reimbursement check directly to the employee.

25.     The reimbursement checks sent by CIGNA were drawn on a Citibank account funded solely by IDB.

**Rodriguez's Submission of False Claims to the Plan**

26.     Rodriguez is married to an IDB employee. Together, they have two young children.

27.     Rodriguez and his wife have been covered under the Plan since 1999. Their two children have been covered under the Plan since their birth in 2002.

28.     The Plan documents made available to IDB employees governed the coverage of Rodriguez, his wife and their children under the Plan.

29.     Between March 2006 and April 2010, Rodriguez submitted approximately 2,897 claim forms to the Plan.

30.     These claim forms showed that either Rodriguez or one of his children was the patient who had received services. The claim forms also attached itemized invoices showing that the provider's fees for the services had been paid directly to the provider.

31.     The claim forms submitted by Rodriguez to the Plan totaled approximately $1,407,646.75 for services supposedly provided to Rodriguez and his two children.

32.     According to the Statement of Offense agreed to by Rodriguez as part of his plea agreement, at least $1,330,205 of the claims forms submitted by Rodriguez were false because either the services had never been rendered or Rodriguez had not paid for them.

33.     As part of his scheme to defraud, Rodriguez forged his wife's name on the claim forms or altered photocopies of claim forms she had previously signed for legitimate services.

34.     In addition, the itemized invoices submitted with the claim forms by Rodriguez had been created by him and were false. He would obtain a legitimate invoice from the provider

5

and use that legitimate invoice as a "template" to create false itemized invoices with the information required by the Plan.

35.     As a result of these claim forms submitted by Rodriguez, CIGNA sent 692 reimbursement checks to Rodriguez's wife.

36.     Rodriguez intercepted the checks in the mail before his wife saw them and forged her signature on the back.

37.     Rodriguez would then deposit the checks into bank accounts either in his name or the name of one of his businesses, including Epsilon Worldwide LLC and Belgravia Holdings.

38.     In the Statement of Offense, Rodriguez admitted that he spent the money on purchases from luxury department stores, mortgage payments and car payments. He also sent some of the money overseas.

39.     Rodriguez admitted in the Statement of Offense that he cashed checks for fraudulent Plan reimbursements for $1,014,475.15.

**IDB Discovers the Fraudulent Scheme**

40.     On May 5, 2010, Rodriguez's wife sent a short, one-page letter to IDB's Ethics Officer, making an unsupported allegation that her husband "has abused the Health Insurance Benefit." The letter contained no indication of what Rodriguez had done or that IDB had been injured as a result of it.

41.     The Special Investigations Unit ("SIU") of CIGNA, as third party administrator of the Plan, evaluated the claims submitted for Rodriguez and his children.

42.     On September 2, 2010, CIGNA issued a report of its findings to IDB.

6

43.     The CIGNA report explained that its SIU had contacted the medical providers for whom Rodriguez had submitted claims to determine whether the claimed services has been provided.

44.     The CIGNA report concluded that

> [b]ased on information received from the providers contacted, discrepancies were found and confirmed by the Investigator on numerous claims for the 2006-2009 timeframe. These claims were submitted for the spouse and two sons of [Rodriguez's wife]. These false claims resulted in an overpayment of $1,008,541.65 for services that were never performed and submitted to CIGNA under the benefit plan for IDB.

45.     The CIGNA report shed some light on Rodriguez's actions, but IDB needed to conduct an independent investigation as well. IDB therefore retained outside counsel in February 2011, to investigate Rodriguez's actions.

46.     During that investigation, IDB's outside counsel interviewed Rodriguez's wife about his conduct and the claim forms he submitted to CIGNA.

47.     An accounting firm retained by IDB's outside counsel issued a report of its investigation on June 15, 2011.

**The Criminal Case Against Rodriguez**

48.     IDB referred the matter to the United States Attorney's Office for the District of Columbia on September 13, 2011. It provided the government with a timeline of events and supporting information.

49.     After the FBI executed a search warrant at his house, Rodriguez took steps to obstruct the investigation by calling CIGNA's SIU, using a false name and claiming to be the Director of the Benefits Department at IDB. He demanded that CIGNA terminate its investigation of Rodriguez.

50.     Upon information and belief, Rodriguez thought that if CIGNA ended its investigation, then the FBI would end its investigation as well.

51.     The Department of Justice filed a criminal information against Rodriguez for violating 18 U.S.C. 1347 (health care fraud) and 18 U.S.C. § 982(a)(2)(7) (criminal forfeiture).

52.     On June 22, 2012, Rodriguez pleaded guilty to the health care fraud count in the information. As part of his plea agreement, Rodriguez signed a Statement of Offense that outlined his scheme to defraud the Plan.

53.     On October 9, 2012, Rodriguez was sentenced to 48 months in prison, as well as 3 years supervised release. The total restitution amount in the judgment was $1,014,475.15.

54.     As a result of the government's efforts, IDB has received restitution of $17,830.60. It has not received any restitution for the remaining $996,644.55.

## COUNT ONE

### Fraudulent Misrepresentation

55.     Plaintiff incorporates paragraphs 1-54 as though re-alleged herein.

56.     Rodriguez made repeated false representations on claim forms submitted to IDB's agent, CIGNA. Specifically, he misrepresented to IDB:

a)  that medical services had been provided to himself or to his children, when these services had not be provided;

b)  that he had paid for medical services and therefore sought reimbursement for those payments, when he had not paid for the medical services; and

c)  that his wife signed the claim forms, when he had forged or otherwise altered her signature on the forms.

57.     Rodriguez knew that these representations were false when he made them.

8

58.     By making these misrepresentations, Rodriguez intended to defraud IDB of reimbursement amounts from IDB's self-funded insurance plan. This intent is evidenced by the steps Rodriguez took to conceal that the claims were false, including

    a)  creating false itemized invoices after visiting doctors to obtain a "real" invoice to use as a template;

    b)  forging his wife's name on the claim forms;

    c)  intercepting the reimbursement checks sent to their home;

    d)  depositing the reimbursement checks into his personal bank account; and

    e)  attempting to impede CIGNA and the FBI's investigation by impersonating an IDB official.

59.     IDB, through its agent CIGNA, relied on the claim forms submitted by Rodriguez because they appeared to be valid forms, included itemized bills from medical providers and appeared to be signed by Rodriguez's wife.

60.     IDB was damaged by Rodriguez's actions because it paid $1,014,475.15 in reimbursements for false claim forms and has received restitution in the amount of $17,830.60. It claims damages here of $996,644.55.

## COUNT TWO

### Conversion

61.     Plaintiff incorporates paragraphs 1-60 as if specifically re-alleged herein.

62.     IDB had a right to possess the assets held by its self-funded Plan until legitimate claims for reimbursement were submitted to the Plan by IDB employees or their dependents.

63.     Rodriguez intentionally took IDB's assets without authority or permission.

64.     His conduct was intentional because he submitted false claim forms with forged signatures of his wife and included falsified itemized medical provider invoices with those claim forms.

65.     Rodriguez did not have authority or permission from IDB or IDB's agent, CIGNA, to obtain reimbursement amounts for medical services that were not actually provided or paid for.

66.     Rodriguez wrongfully obtained IDB's property by submitting false claims to the Plan; specifically, he wrongfully obtained reimbursement checks from the Plan that had been drawn on a bank account funded by IDB.

67.     The value of IDB's property that was wrongfully taken by Rodriguez, and not repaid through the criminal restitution process, is $996,644.55.

## COUNT THREE

### Unjust Enrichment/Implied Contract

68.     Plaintiff incorporates paragraphs 1-67 as if specifically re-alleged here.

69.     IDB conferred a benefit on Rodriguez when IDB's agent, CIGNA, sent Rodriguez reimbursement checks for medical services that had not been provided or paid for.

70.     Rodriguez was aware that IDB had provided these reimbursement checks because he forged his wife's signature on the back and, upon information and belief, deposited them into a bank account he controlled. He also spent some portion of the money on personal purchases and sent some portion of the money overseas to unknown individuals.

71.     Rodriguez's continued retention of the benefit of the reimbursement checks from the IDB Plan is inequitable because the purpose of the issuance of reimbursement checks under the Plan is to repay the IDB employee (Rodriguez's wife) for medical services she (or her

dependents) had received and paid for. Rodriguez, however, had not received or paid for medical services as claimed in the forms.

72.     Rodriguez has been unjustly enriched in the amount of $996,644.55.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby demands judgment as follows:

a)  An award for money damages in the amount of $996,644.55 for Defendant's wrongful acts;

b)  An award of costs and disbursements made in this action, as allowed by state or federal law;

c)  An award of punitive damages;

d)  An award of reasonable attorney's fees;

e)  An award of any such further relief that is proper.

Dated: August 30, 2013

Sara E. Kropf (D. Md. Bar No. 26818)
Law Office of Sara Kropf PLLC
1001 G Street, NW
Suite 800
Washington, DC 20001
(202) 627-6900
Fax (202) 347-0316
sara@kropf-law.com

*Counsel for Plaintiff*